**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Project Agricultural Improvement and Power District,<br><br>Plaintiff,<br><br>v.<br><br>Trench France SAS, et al.,<br><br>Defendants. | No. CV-17-01468-PHX-DGC<br><br>**ORDER** |

Plaintiff Salt River Project filed a complaint against Defendants Trench Limited ("Trench-Canada") and Trench France, S.A.S ("Trench-France") for a May 2015 explosion at its Santan Generating Station. Doc. 1. Defendants moved to dismiss the complaint for lack of personal jurisdiction. Docs. 11, 15. At a subsequent hearing, the Court granted Plaintiff's request for limited jurisdictional discovery. Doc. 26. Plaintiff completed that discovery and filed its response. Doc. 44. The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For the reasons that follow, the Court will grant the motion in part.

**I.     Background.**

Plaintiff alleges that it sustained damages probably caused by Trench bushing explosions in 2008, 2010, and 2011. Doc. 1 ¶ 8. Trench-France designed the bushings and Trench-Canada manufactured them. Doc. 11 at 20; Doc. 15 at 20. Trench-Canada sold the bushings to Austria-based VA Tech EBG Transformatoren, GmbH & Co. ("VA

Tech") in 2003. Doc. 15 at 20. Plaintiff subsequently purchased VA Tech transformers which included the Trench bushings as component parts. Defendants were not party to this purchase agreement (Doc. 11 at 20; Doc. 15 at 20), but Trench-Canada has sold bushings in Arizona as recently as 2012 through an independent sales representative (Doc. 11 at 21; *see* Doc. 55-1 at 2-23 (filed under seal)). Its last sale of bushings to Plaintiff was in 2010, although those bushings are not involved in this case. Doc. 11 at 21.

In response to the first two explosions, Trench-France and Trench-Canada engineers visited Plaintiff's facilities on April 28, 2010. Doc. 1 ¶ 9. Defendants transported the failed bushings from Plaintiff's facilities to plants in France and Canada for testing. *See* Doc. 45-1 at 17-18; Doc. 55-1 at 44 (filed under seal). In 2014, Trench-Canada requested testing data from Plaintiff. *See* Doc. 55-1 at 86-89 (filed under seal). Trench-Canada investigated similar bushing failures at other Arizona energy companies in 2011, 2012, and 2013. *See* Docs. 55-1 at 43-83, 55-2 at 10- 19 (filed under seal).[1]

Plaintiff decided in 2012 to replace all high-voltage (230 kV and 500 kV) Trench bushings in its system. Doc. 1 ¶ 12. Trench-France subsequently published a 2014 safety advisory that some 230 kV Trench bushings had unusually high failure rates, causing fires and explosions. Doc. 1 ¶ 13; Doc. 45-13. Plaintiff then contacted Defendants to determine the reliability of their lower-voltage bushings. Doc. 1 ¶ 14. Pursuant to Defendants' recommendations, Plaintiff installed monitors on multiple Trench bushings, including 69 kV bushings at the Santan Generating Station. Doc. 1. ¶ 14. The monitors, manufactured by Defendant Doble Engineering Company, were designed to warn Plaintiff of imminent bushing failures. Doc. 1 ¶ 14.

On May 15, 2015, a Trench 69 kV bushing at Plaintiff's Santan Generating Station exploded without warning, causing approximately three million dollars in damages.

---

[1] Plaintiff asserts that Trench communicated the investigation's conclusions, but Plaintiff does not identify whether that communication came from Trench-France or Trench-Canada. Doc. 45-1 at 18-19.

Doc. 1 ¶ 15. Plaintiff filed this action alleging negligence and strict products liability against Defendants. Doc. 1 ¶¶ 19-43.

**II. Legal Standard.**

To withstand a 12(b)(2) motion, the plaintiff must show that the defendant is properly subject to the court's jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In ruling on such a motion, the Court considers the pleadings and any materials submitted by the parties, accepting as true any uncontroverted allegations in the complaint and resolving any factual conflicts in the plaintiff's favor. *Id.*

**III. Discussion.**

Arizona's long-arm statute, Ariz. R. Civ. P. 4.2(a), applies in this diversity action. *See Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559 (9th Cir. 1995). Rule 4.2(a) "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997). "[A] corporation may be subject to personal jurisdiction only when its contacts with the forum support either specific or general jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Plaintiff argues that Defendants are subject to specific jurisdiction. *See* Doc. 44. Specific jurisdiction exists if a foreign corporation's contacts with the forum give rise or relate to the cause of action before the Court. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The Ninth Circuit employs a three-prong test to determine whether a non-resident has sufficient minimum contacts for specific jurisdiction:

> (1) [T]he defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff has the burden of satisfying the first two elements. *Id.* If it does, Defendants must show that the exercise of jurisdiction would be unreasonable. *Id.* at 1068-69.

As an initial matter, the Court will not impute Trench-Canada's forum contacts to Trench-France and vice versa. "[W]here a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Id.* at 1071 (internal quotation marks omitted). Plaintiff does not contend otherwise.

Plaintiff argues that Defendants' investigation of failed bushings in Arizona, including its contacts with Plaintiff, combine to trigger specific jurisdiction. Doc. 44 at 11-13. Defendants counter that the only contacts relevant to this products liability case are those surrounding Plaintiff's acquisition of the Trench bushings. Doc. 11 at 8-9; Doc. 15 at 8-9; Doc. 47 at 4-7. Because there are no such contacts, Defendants argue, the Court lacks personal jurisdiction. *Id.* Defendants further argue that post-incident contacts cannot form the basis for personal jurisdiction. *Id.* Defendants contend that, in any event, the alleged harm did not arise out of the investigatory contacts between 2010 and 2014. Doc. 11 at 10-12; Doc. 15 at 10-12.

The Court will address these arguments claim-by-claim. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (there must be "a connection between the forum and the specific claims at issue"). The complaint includes negligence and strict product liability claims for the design and manufacturing of the bushings. Doc. 1 ¶¶ 19-43. It also alleges negligence and strict product liability claims for failure to warn Plaintiff about the bushings' risks. *Id.* ¶¶ 21-23, 27-29, 33-35, 40-42.

## A. Purposeful Direction.

Where, as here, the complaint sounds in tort, the inquiry under the first prong is whether a defendant purposefully directed its activities at the forum state. *Axiom Foods*, 874 F.3d at 1069. This requirement, sometimes referred to as the "effects test," is satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum. *Id.* The effects test does not automatically authorize specific jurisdiction over a foreign act with foreseeable effects in the forum state. *See Axiom Foods*, 874 F.3d at 1070 (citing *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012)). Nor does the effects test mean that specific jurisdiction may be based solely on a defendant's knowledge that the object of his tortious activity resides in a particular state. *See id.* at 1069-70. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). The Court must always focus on the "relationship among the defendant, the forum, and the litigation." *Id.* at 1126.

### 1. Intentional Act.

The parties do not dispute that Defendants' contacts with the forum were intentional.

### 2. Expressly Aimed at the Forum.

Trench-France has sufficient contacts expressly aimed at the forum. Trench-France visited Plaintiff's Arizona facilities in 2010 and transported failed bushings to France for analysis. It also responded to Plaintiff's request for recommendations on low-voltage bushings.

The U.S. Supreme Court cautioned in *Walden v. Fiore* that the "plaintiff cannot be the only link between the defendant and the forum," 134 S. Ct. at 1122, but this case is distinguishable. In *Walden*, the defendant was a Georgia police officer who seized Nevada residents' money in Georgia and wrote a false affidavit to justify the seizure. *Id.* at 1119-20. Although the Nevada residents felt the harm in Nevada, "no part of [the

defendant's] course of conduct occurred in Nevada." *Id.* at 1124-25. The contacts were therefore not expressly aimed at the forum. *Id.* at 1126.

In *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015), the Ninth Circuit applied the principles of *Walden* to find no express aiming at California where the defendant acted "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California." *Id.* at 1215. Similarly, in *Axiom Foods* the Ninth Circuit declined to find express aiming at California where at most ten of a tortious newsletter's 343 recipients were physically located in California, and the defendant conducted no business in California. 874 F.3d at 1070-71. The Ninth Circuit reasoned "[i]t can hardly be said that 'California [wa]s the focal point both of the [newsletter] and of the harm suffered.'" *Id.* (quoting *Walden*, 134 S. Ct. at 1123).

The facts here are different. Trench-France repeatedly reached into Arizona. It visited Plaintiff's Arizona facilities in 2010, took failed bushings from Arizona to France for analysis, and provided advice to Plaintiff – an Arizona company – in 2014. All of this conduct focused on bushings located in Arizona. Trench-France does not argue that Plaintiff initiated all of this contact. The Court finds that Trench-France expressly aimed conduct at Arizona.

Trench-Canada has even more contacts with the forum. It used an independent agent to facilitate bushing sales in Arizona as recently as 2012, and it sold bushings to Plaintiff as recently as 2010. It visited Plaintiff's Arizona facilities in 2010, investigated bushing failures at three Arizona companies between 2010 and 2014, and transported failed bushings to Canada for analysis. Trench-Canada also provided advice to Plaintiff in 2014.

### 3. Harm in the Forum.

To establish purposeful direction, Plaintiffs must show that Defendants knew they were causing harm likely to be suffered in Arizona. This "element is satisfied when defendant's intentional act has foreseeable effects in the forum," and can even be established if "the bulk of the harm occurs outside of the forum." *Brayton Purcell LLP v.*

*Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (internal quotation marks omitted). "In order to establish specific jurisdiction, a plaintiff must also show that jurisdictionally significant harm was suffered in the forum state." *Mavrix*, 647 F.3d at 1231.

Defendants' investigation and recommendations caused foreseeable harm in Arizona. Defendants knew or should have known that their investigations – and the recommendations that resulted – could cause harm in Arizona to the extent they informed infrastructure decisions by Arizona companies.

**B.    Arising Out Of.**

Purposeful direction is not enough. The claims in this case must also arise out of Defendants' contacts with Arizona. The Ninth Circuit uses a "but for" test. A claim arises out of a defendant's forum contacts if, "but for" the contacts, the cause of action would not have arisen. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

The negligence and strict liability claims premised on negligent design and manufacturing do not arise out of Defendants' contacts with the forum. These claims allege that the bushings were negligently designed and manufactured at the time of their sale in 2003, and Plaintiff presents no facts to substantiate any relationship between Defendants and the forum in or before 2003. Thus, to the extent they allege negligent design and manufacturing, the Court dismisses Counts One through Four.

But the negligence and strict liability claims premised on failure to warn do arise out of Defendants' contacts with the forum. Defendants argue that their visit to Plaintiff's facilities in 2010 and subsequent investigation did not cause the explosion. The complaint, however, alleges that these contacts informed Defendants of the risks associated with the bushings. And despite ample opportunity to do so, including a direct communication of advice to Plaintiff in 2014, Defendants failed to convey the risks associated with the low-voltage bushings. Plaintiff argues that it relied on Defendants' deficient warnings to retain the low-voltage bushing that eventually exploded in

May 2015. This claim would not have arisen but for Defendants' failure to warn during its Arizona investigation and communications.

Defendants cite cases suggesting that post-incident contacts cannot trigger jurisdiction. But in both *Magna Powertrain* and *Nevada Power Company*, the plaintiff attempted to rely on a defendant's post-incident contacts to establish personal jurisdiction over a lawsuit concerning the incident itself. *Magna Powertrain De Mex. S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 831 (E.D. Mich. 2016) (court held that "plaintiff's claims did not *arise* from contacts that occurred after the actual harm"); *Nev. Power Co. v. Trench Fr. SAS*, No. 2:15-CV-264 JCM (NJK), 2015 WL 6737015, at *3 (D. Nev. Nov. 2, 2015) ("Trench France's forum-related contacts occurred after, and in response to, the 2011 fire which gave rise to this action"). Although Defendants made contacts with Arizona in response to the 2008 and 2010 explosions, Plaintiff has not sued Defendants for damages associated with those explosions. Plaintiff's claims relate to the 2015 explosion, and Defendants' contacts occurred before that event.

**C.  Reasonableness.**

Because Plaintiff has made a prima facie case of personal jurisdiction on its failure to warn claims, the burden shifts to Defendants to show that the exercise of jurisdiction would be unreasonable. *Axiom Foods*, 874 F.3d at 1068-69. Defendants do not argue that personal jurisdiction would be unreasonable. *See* Docs. 11, 15, 47. The Court therefore finds that the exercise of personal jurisdiction is reasonable.[2]

**IT IS ORDERED:**

1.  Defendants Trench-France and Trench-Canada's motions to dismiss (Docs. 11, 15) are **granted in part**. Counts One through Four are dismissed to the extent

---

[2] Plaintiff requests an opportunity for a second round of discovery regarding personal jurisdiction, but Plaintiff has identified no unresolved issue that would alter the Court's decision on personal jurisdiction. The Court will set a litigation schedule that affords reasonable time for merits discovery.

they allege negligent design or manufacturing, and survive to the extent they allege a failure to warn.

       2.     The Court will set a case management conference by separate order.

Dated this 29th day of November, 2017.

_____
David G. Campbell
United States District Judge