IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Salt River Project Agricultural Improvement and Power District,<br><br>    Plaintiff,<br><br>v.<br><br>Trench France SAS, et al.,<br><br>    Defendants. | No. CV-17-01468-PHX-DGC<br><br>**ORDER** |

      Plaintiff Salt River Project ("SRP") sued Defendants Trench France, S.A.S ("Trench-France") and Trench Limited ("Trench-Canada") alleging negligence and strict products liability for failure to warn of risks associated with electrical bushings, resulting in a May 2015 explosion at SRP's Santan Generating Station. Doc. 1. The parties are currently engaged in discovery. Trench-France, a French corporation with its principal place of business in France, has filed a motion to appoint a commissioner pursuant to Article 17 of Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), *opened for signature* March 18, 1970, 28 U.S.T. 2555, T.I.A.S. No. 7444. Doc. 78. Trench-France asks the Court to order that all documents and electronically stored information ("ESI") it produces in this suit be produced pursuant to the procedures in Chapter II of the Hague Convention. *Id.* SRP opposes the motion. Doc. 84. The Court will grant the motion.

///

**I.     The French Blocking Statute and the Hague Convention.**

French law states that, "[s]ubject to treaties or international agreements and applicable laws and regulations, it is forbidden for any person, to request, search or communicate under written, oral, or any other form, documents or information of an economic, commercial, industrial, financial, or technical nature for the purpose of constituting evidence for or in the context of foreign judicial or administrative proceedings." Doc. 78 at 5 (quoting Article 1 *bis* of Law No. 80-538). This law is commonly referred to as the "French Blocking Statute." *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa* ("*Aerospatiale*"), 482 U.S. 522, 526 n.6 & 544 n.29 (1987); *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No. CV1602368ODWRAOX, 2017 WL 3433542, at *5 (C.D. Cal. Feb. 22, 2017). Violators of the statute may face up to six months imprisonment and a fine of up to €90,000. Doc. 78 at 5-6 (citing Article 3 of Law No. 80-538).

Because both France and the United States are signatories of the Hague Convention, producing evidence pursuant to the Hague Convention's procedures does not violate the French Blocking Statute. The Convention outlines two distinct procedures.

Chapter I involves "Letters of Request," whereby the Court would send a letter of request to French authorities and a French judge would oversee discovery in France. *See* Hague Convention arts. 1-14; Doc. 78 at 41 ¶ 12. Courts have noted that this procedure can be "unduly time consuming and expensive." *Aerospatiale*, 482 U.S. at 542.

Chapter II allows for the appointment of a private attorney in France to serve as "commissioner" and oversee production in France. *See* Hague Convention art. 17; Doc. 78 at 41 ¶ 13. Under this procedure, the Court appoints a commissioner and seeks formal authorization from the French Ministry of Justice for the appointment. *Id.* Trench-France asserts that authorization generally takes about 60 days, after which the process moves swiftly. Doc. 78 at 42-44 ¶¶ 15-20. Trench-France also asserts that the procedure is unlikely to impose any substantive limit on the scope of discoverable information. Doc. 78 at 43 ¶¶ 18-19. Trench-France seeks to use the Chapter II

procedure. It has identified Mr. Christian Curtil, an independent French attorney, as its proposed commissioner, and has submitted a formal request form, which it will translate to French and submit to the appropriate office of the French Ministry if the Court approves. *See* Doc. 78 at 44 ¶¶ 21-22; Doc. 78-1 at 5-9. Trench-France will bear the costs associated with this process. Doc. 78 at 2.

## II. Discoverable Information in France.

This suit is subject to the Mandatory Initial Discovery Pilot ("MIDP") project, which requires the parties to produce documents and ESI that "may be relevant to any party's claims or defenses." *See* Doc. 5 at 7. Trench-France asserts that it maintains documents and ESI in France that it is obligated to produce under the MIDP. Doc. 78 at 4. Trench-Canada, a Canadian corporation affiliated with Trench-France, maintains many of the same documents and ESI in Canada. *Id.* Trench-Canada will produce these documents without issue, as it is not subject to the French Blocking Statute, but Trench-France states that there are at least some documents and ESI which are held solely by Trench-France in France. Doc. 78 at 5, 20. Trench-France argues that it would violate the French Blocking Statute if it produced these documents and ESI outside of Hague Convention procedures. *See* Doc. 78 at 5, 39-41. Trench-France has consistently maintained this position, raising the need for the appointment of a commissioner at the parties' Rule 26(f) conference, the Rule 16 scheduling conference, and in its initial MIDP response. *See* Doc. 67 at 7; Doc. 79 at 22-26; Doc. 78 at 29-30. SRP has consistently objected.

## III. Legal Standard.

The Supreme Court has explained that use of Hague Procedures is "optional," and that "the Hague Convention did not deprive the District Court of the jurisdiction it otherwise possesse[s] to order a foreign national party before it to produce evidence physically located within a signatory nation." *Aerospatiale*, 482 U.S. at 539-40. Even where ordering the foreign party to produce discovery will potentially cause the party to violate a blocking statute in its home country, use of Hague procedures is not mandatory.

*Id.*; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 (9th Cir. 1992).

To determine whether to utilize Hague Procedures, federal courts must conduct a "particularized analysis" of the "particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Aerospatiale*, 482 U.S. at 543-44. The Ninth Circuit considers the factors contained in the Restatement (Third) of Foreign Relations Law § 442(1)(c):

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Richmark*, 959 F.2d at 1475 (citing *Aerospatiale*, 482 U.S. at 2556 n.28). The Ninth Circuit also considers "the extent and the nature of the hardship that inconsistent enforcement would impose upon the" foreign national, and "the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." *Richmark*, 959 F.2d at 1475 (citing *United States v. Vetco Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981)).

**IV. Analysis.**

Given Trench-France's declaration that it has relevant evidence in France, and the declaration it has provided from an experienced French attorney on the applicable French law and procedures, the Court will accept Trench-France's assertion that production of the documents and ESI required by the MIDP would violate French law. *See Richmark*, 959 F.2d at 1474 & n.7 (accepting foreign party's assertion on the basis of a letter from the foreign government, and stating that "[w]e have neither the power nor the expertise to determine for ourselves what [the other country's] law is"); *Connex*, 2017 WL 3433542, at *11 (accepting French party's assertion on the basis of a declaration from French

counsel, a copy of the French Blocking Statute, and a letter from the French Ministry of Justice). With that assumption, the Court will address each of the relevant factors.

### A. Importance of the Documents and ESI.

"Where the outcome of litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws. Where the evidence is directly relevant, however," this factor weighs against utilizing Hague procedures. *Richmark*, 959 F.2d at 1475 (internal citation omitted).

Trench-France argues that the documents and ESI in its possession are not of critical importance because they are mostly cumulative of evidence that Trench-Canada will produce. Doc. 78 at 10. SRP argues that, by definition, any documents and ESI subject to the MIDP are "directly relevant" and crucial to this litigation. Doc. 84 at 5-6. Although it is unclear how many documents are possessed exclusively by Trench-France, the Court has no basis at this point for concluding that the documents are critically important to the resolution of this case. The MIDP sweeps broadly, requiring production of information relevant to claims or defenses, but that does not mean that all information subject to production will prove pivotal to the outcome of this case. The Court finds that this factor weighs slightly in favor of utilizing Hague procedures.

### B. Specificity of the Request.

This factor considers "how burdensome it will be to respond to" the discovery request. *Richmark*, 959 F.2d at 1475. Broad, generalized requests for information weigh in favor of utilizing Hague procedures, while specific, limited requests disfavor the use of Hague procedures. *Id.*; *see also Connex*, 2017 WL 3433542, at *12.

Trench-France argues that the MIDP's request for all documents and ESI that "may be relevant" is broad and generalized. Doc. 78 at 11. SRP responds that the MIDP is narrowly tailored to evidence that is relevant to the claims, and Trench-France itself has already identified the documents and ESI in its initial MIDP response. Doc. 84 at 6.

Thus, SRP argues, even if facially broad, the request in reality is tailored to those specific documents which Trench-France admits to having already identified. Doc. 84 at 6-7.

The Court cannot conclude that production under the MIDP is narrowly tailored for purposes of this analysis. It is a broad requirement for the production of relevant information. This factor weighs in favor of using the Hague procedures.

### C. Location of Evidence.

If all of the information to be disclosed and the persons who will produce the information are located in the foreign country, this weighs in favor of utilizing Hague procedures because "those people and documents are subject to the law of that country in the ordinary course of business." *Richmark*, 959 F.2d at 1475. SRP argues that much of the evidence originated in Arizona, and that Trench-France is "a multinational corporation, operating under various entities in various countries." Doc. 84 at 7. Trench-France states that Trench-Canada will produce all relevant information in its possession without the need for Hague procedures. Doc. 78 at 4. Thus, the only information subject to this motion is information not in the possession of Trench-Canada – information that Trench-France asserts is located in France. This factor favors use of the Hague procedures.

### D. Availability of Alternative Means.

"If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Richmark*, 959 F.2d at 1475. The Ninth Circuit requires that "the alternative means must be 'substantially equivalent' to the requested discovery." *Id.* Obtaining the documents from Trench-Canada does not appear to be a substantially equivalent alternative because Trench-Canada does not have all of the documents and ESI. According to French counsel, utilization of Chapter II procedures will allow discovery of all relevant documents and ESI, and will delay disclosure only about 60 days – allowing Trench-France to produce the documents before the close of fact discovery on December 31, 2018. *Cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014)

("At this late date, it would be difficult, if not impossible, for [the domestic plaintiffs] to obtain the discovery expeditiously through Hague Convention [Letter of Request] procedures."). SRP asserts that using Hague procedures will "undoubtedly delay this litigation" and that it may be forced to hire a French attorney "to litigate the MIDP before" the commissioner, but SRP provides no support for these assertions. Doc. 84 at 11, 14. The Court will accept the assertions of Trench-France's French counsel who is experienced in using the Hague procedures. The Court finds that Chapter II Hague procedures are a substantially equivalent alternative. This factor favors use of the Hague procedures.

### E. National Interests.

This factor requires the Court to "assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States or" France. *Richmark*, 959 F.2d at 1476 (quoting Restatement (Third) of Foreign Relations Law § 442 cmt. c). It "is the most important factor." *Id.* The United States has an interest in "vindicating the rights of American plaintiffs" and preserving fairness in litigation by requiring equal disclosure from the parties. *See Aerospatiale*, 482 U.S. at 540 n.25; *Richmark*, 959 F.2d at 1477. But these interests will not be impaired by using Hague procedures. Trench-France has agreed to the expedited Chapter II procedures, under which it will produce all information required by the MIDP and the Federal Rules of Civil Procedure. And as Trench-France notes, if the procedures are unsuccessful, the Court retains power to order discovery under the Rules. Doc. 78 at 15.

By enacting the Blocking Statute, France has expressed an "emphatic" sovereign interest in "controlling foreign access to information within its borders, and in protecting its citizens from foreign discovery practices it views as antithetical to the French legal culture." *In re CRT Antitrust Litig.*, 2014 WL 5462496, at *6; *In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 355 (D. Conn. 1991); *Aerospatiale*, 482 U.S. at 557-58. Unlike the U.S. interests, which are unlikely to be impaired if Hague procedures are used,

this French interest may be impaired if the Court simply orders discovery. This factor weighs in favor of utilizing Hague procedures.

### F. Hardship to Trench-France.

Federal courts should "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations[.]" *Aerospatiale*, 482 U.S. at 546. If the foreign national is "likely to face criminal prosecution" in its home country for complying with the U.S. court order, "that fact constitutes a 'weighty excuse' for nonproduction." *Richmark*, 959 F.2d at 1477 (quoting *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 211 (1958)). This factor will not weigh in favor of Hague procedures, however, if the hardship is self-imposed or if it could have been avoided. *Id.*

Trench-France argues that the potential penalties under the French Blocking Statute are severe, and cites a 2007 enforcement action against a French attorney who violated the Statute. Doc. 78 at 14. SRP asserts that any hardship to Trench-France is speculative. Doc. 84 at 13. Many courts have expressed doubt as to whether the French Blocking Statute subjects parties to a "realistic risk of prosecution." *See In re CRT Antitrust Litig.*, 2014 WL 5462496, at *6 (collecting cases). Nonetheless, the Court finds that this factor weighs in favor of utilizing Hague procedures because the statute at least creates a possibility of criminal prosecution. Moreover, there is no indication that Trench-France imposed this hardship on itself or could have avoided it. Trench-France proactively has sought to overcome the hardship by raising the issue early and taking necessary steps to initiate voluntary Chapter II Hague procedures.

### G. Likelihood of Compliance.

"If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order." *Richmark*, 959 F.2d at 1478. Trench-France asserts without equivocation that it will comply with Hague procedures and produce the required documents and ESI. This factor weighs in favor of Hague procedures.

### H. Conclusion.

The relevant factors weigh in favor of using Hague procedures. The Court therefore will enter the order requested by Trench-France. Because Trench-Canada will produce documents and ESI without awaiting compliance with the Hague procedures, those procedures should be used only for discoverable information that is possessed by Trench-France and not by Trench-Canada.

**IT IS ORDERED:**

1. Trench-France's motion (Doc. 78) is **granted**.
2. The Court will enter the order requested by Trench-France.

Dated this 19th day of March, 2018.

_____
David G. Campbell
United States District Judge